[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a marital dissolution action brought by the plaintiff, John Peter Tripp, by complaint dated June 14, 2001. An answer and cross complaint were filed by the defendant, Diane W. Tripp, on December 4, 2001. After unsuccessful pretrials the case was tried on May 24, 29, 30 and July 2, 2002.
Based on the evidence the court makes the following findings:
 The parties were married on February 5, 1989 in Old Lyme, Connecticut;
 The plaintiff has resided in Connecticut for at least a year prior to the filing of the complaint;
 No children have been born to the defendant since the date of the marriage;
Neither party presently receives assistance from the State of Connecticut or from any town or municipality.
The plaintiff is fifty-five (55) years old and a college graduate. The defendant is sixty-one (61) years old and a high school graduate. This was a second marriage for both. The defendant has four adult children by her first marriage. The plaintiff has three stepchildren from his first marriage.
The parties met in August of 1988. The defendant was divorced and working as a manager at a popular restaurant in Stonington, Connecticut. The plaintiff, a recent widower, convinced the defendant that she should leave her position as a restaurant manager (making $40,000 annually) before an expected change of ownership at the end of the year. She left CT Page 9038 her position in early October of 1998 and removed to his home in Canterbury.
In 1988 the plaintiff was forty-two (42) years old. He was a co-owner with his brother and father of a successful lumber business known as the A.D. Tripp Company with locations in at least three towns in Eastern Connecticut. He earned about $200,000 annually. His first wife died in February of 1988 leaving her joint interest in the family residence to him. He was active in his business and the community and by local standards was a very successful person.
After their marriage in February 1989 the defendant sought to develop a warm relationship with the plaintiffs mother and his stepchildren without success. The plaintiffs relationship with his mother was strained. His stepchildren resented his marriage to the defendant so soon after the death of their mother. The plaintiffs home was furnished with property acquired by his first wife and the defendant was not encouraged to bring her own furniture to the home. Each week the defendant was given $1000 from the business to pay the expenses of the household.
The plaintiff, in 1990, purchased the one-half interest of his brother in the business to become the sole owner of the stock of the company then valued at about four million dollars. He also purchased the interest of a brother-in-law in a lumber business in Danielson for $500,000. He financed these purchases with bank loans and the defendant co-signed the promissory notes.
As the sole owner of the business, the plaintiffs management style didn't cause the company to prosper. The defendant's son, a former manager for the plaintiff, testified that prior to the buyout, the plaintiff had been the "numbers" man at the company and his brother, Henry Tripp, was the "personnel" person. After taking over, the plaintiff hired consultants, managers and comptrollers to run the locations for him. He spent long hours on the golf course and at volunteer work, causing the business to suffer. Several of his key salespeople left because of his neglect of the business. Some were fired and one was sued unsuccessfully at a cost of hundreds of thousands of dollars. During this downward spiral of the business the plaintiffs relationship with the defendant became strained. He did not share the business reversals with her although she again signed promissory notes as he refinanced in the mid-nineties to keep the business going. He did not communicate with her and on occasion, when he did, he was verbally abusive to her.
In 1997, because of the defendant's awareness of the plaintiffs financial difficulties, she went to work as a manager of a restaurant in Mystic, Connecticut. Except for a short but intense few months as First CT Page 9039 Selectman of Canterbury she had been a homemaker since October 1989. Her return to work was not greeted with enthusiasm by the plaintiff because of the evening hours involved in her work and her absence when the plaintiff came home for dinner.
In 1999 the A.D. Tripp Company closed and the inventory was sold. The plaintiff filed for bankruptcy in 2000. All real property owned by him or by the company is now owned by the trustee in bankruptcy. He now works as a salesman for an R/V business in Windsor, Connecticut earning $35,000 annually. His residence in Canterbury is in foreclosure. His only substantial asset is an A.D. Tripp Profit Sharing (IRA) account at Paine Webber with a current balance of approximately $450,000.[1] Sometime in the mid to late nineties he began to gamble at the local casinos. He has lost money regularly as evidenced by frequent ATM withdrawals. He has violated standing orders of the court by withdrawing $5000 monthly from his profit sharing account for the last year. His financial affidavit does not include an annual gift of ten thousand dollars from his mother or the cash surrender value of an insurance policy. He receives nothing from the trust noted below. Although his income has been drastically reduced by the failure of his business he continues to spend at the casinos as he pleases without regard for consequences. He has not filed tax returns for the past three years. Penalties will apply to his IRA withdrawals.
In 1999 the defendant became employed a seasonal restaurant on the waterfront in Norwich, Connecticut. In 2000 she became the owner. She did so to help with family finances. The business was unsuccessful. It closed and the defendant filed a personal bankruptcy petition. In June of 2001 the defendant left the plaintiffs residence in Canterbury and removed to Mystic. Her son purchased an automobile for her use when she left. She has received $300 weekly from the plaintiff by way of alimony pendente lite for several months. The plaintiff has paid $1500 toward the defendant's attorney's fees.
The parties are at odds over alimony, a property settlement, attorney's fees and the benefits of an existing life insurance policy owned by the plaintiff.
After hearing the testimony the court concludes the marriage has broken down irretrievably and that the plaintiff is primarily responsible for the breakdown. His mismanagement of his business and personal life has seriously affected the life of the defendant and others close to him, yet he accepts little responsibility for his or their situations. He is underemployed considering his education and experience. The separation has existed for more than a year. There is no reasonable likelihood of reconciliation. The marriage should be dissolved. The court, being CT Page 9040 mindful of the provisions of Chapter 815j of the Connecticut General Statutes, particularly the criteria of §§ 46b-81m 46b-82 and relevant case law, finds the following orders to be fair and equitable:
 1. The marriage of the parties is dissolved on the ground of irretrievable breakdown;
 2. By way of property settlement the defendant shall transfer by rollover the sum of Two Hundred Fifty-Five Thousand Dollars from the Paine Webber IRA account calculated as follows: one-half of the current balance of $450,000 plus one-half of $60,000 withdrawn by the plaintiff in violation of the court's standing orders;
 3. Alimony in the amount of $300 weekly payable until the defendant reaches the age of 65 years and nine months, or until her remarriage or death, non-modifiable as to term or amount;
 4. The plaintiff shall maintain health insurance through COBRA or other means for the benefit of the defendant until March 5, 2006 when she reaches age sixty-five, or until she can obtain such insurance through her place of employment, whichever occurs first.
 5. The defendant shall be maintained as a beneficiary of the plaintiffs Northwestern Mutual Life Insurance to the extent that alimony payments are due and payable to her on the event of his death. Should the policy not be properly in effect upon his death she shall have a preferred creditor's claim against his estate for an amount equal to the alimony payments due to her.
 6. The plaintiff shall pay to the defendant one half of the net proceeds, if any, which he might receive upon the sale of his stock of A.D. Tripp Company, or in parcels of real property located in Norwich, Jewett City, Killingly, Franklin or Canterbury, Connecticut, after payment of mortgages, closing costs, tax liabilities, and other costs associated with the ownership or disposition of said properties.
7. Additional counsel fees are awarded to the defendant in CT Page 9041 the amount of $1500.
 8. With the exception of specific orders to the contrary herein, each party shall be entitled to the ownership of the assets and shall be responsible for the payment of the liabilities shown on his and her respective proposed orders or financial affidavits and shall hold the other harmless from any liabilities set forth therein or any liabilities in connection with the assets;
 9. The court shall retain jurisdiction to enter such orders as may be necessary in order to effectuate the provisions of the judgment;
10. The plaintiff shall prepare the judgment file.
Potter, J.